IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kelvin Thomas Simpson,           ) | No. CV-12-357-PHX-NVW (LOA) |
|                                  ) | |
| Petitioner,       ) | **REPORT AND RECOMMENDATION** |
|                                  ) | |
| vs.                              ) | |
|                                  ) | |
| Charles L. Ryan, et al.,         ) | |
|                                  ) | |
| Respondents.      ) | |
|                                  ) | |

      This matter is before the Court on Petitioner's *pro se* Petition for Writ of Habeas Corpus (the "Petition"), pursuant to 28 U.S.C. § 2254, in which Petitioner challenges four criminal convictions in Maricopa County, Arizona, Superior Court, Case No. 2005-116851-001. (Doc. 1) Respondents filed an Answer to Petition and Petitioner filed a Reply to Respondents' Answer. (Docs. 10-11) As explained below, the undersigned Magistrate Judge recommends the Petition be denied as untimely.

**I. Background**

    **A. Trial and Sentencing**

      On June 13, 2005, the State of Arizona indicted Petitioner on two counts of Molestation of a Child, Class 2 felonies and dangerous crimes against children (Counts One and Two); and two counts of Attempted Molestation of a Child, Class 3 felonies and dangerous crimes against children (Counts Three and Four). (Doc. 10, Exhibit ("Exh.") A) The charges were based on an incident summarized by the Arizona Court of Appeals as

follows:

On June 22, 2005, A.A., her twin sister, N.A., and their niece, F.A., were swimming in a pool at an apartment complex where the sisters lived. A young boy was also in the pool and the boy's mother was watching the children swim.

At the time of trial, all three girls were nine years old. A.A. testified that while swimming, a man, later identified as Defendant, grabbed her with his left hand while his right hand touched her twice on her vagina over her clothes. A.A. stated she was uncomfortable and tried to get away from him. She asked the boy to tell his mother about the incident. However, the boy was too young to understand what she was relating and the boy's mother did not speak English. Later, A.A. told her own mother what occurred.

F.A. testified at trial that while swimming in the pool, Defendant touched her on her thigh near her vagina. She also tried to tell the boy and his mother about it, but neither could understand her. However, when some friends came over to the pool, F.A. told them to tell her grandmother about the incident.

N.A. testified that when she was swimming with her sister and her niece, Defendant touched her "upper leg." She said that because she was bothered by the touch, she told her sister and her niece.

The twins' mother, F.F., and F.A.'s grandmother, testified at trial. She stated that when she returned home from the grocery store and walked by the pool, she saw Defendant in the pool with the girls. She indicated she was concerned about the situation because she had long seen Defendant staring at "little girls" and "wom[e]n" for "long periods of time."

F.F. testified that as she was putting her groceries away, a neighbor girl came by her apartment and said the boy's mother wanted to talk to her. After they spoke, F.F. took the children out of the pool and called the police. F.F. testified that she had previously instructed the girls that if anyone touched their private areas, they should tell someone.

A Phoenix Police Officer responded to the call at the victims' apartment complex. He testified the victims appeared upset. He indicated he spoke to the boy's mother who reported that Defendant "had looked at the children in a bad way." Defendant was arrested that day.

A few days after the incident, a Phoenix Police Detective interviewed the three children individually. The detective used a stuffed bear to assist the girls in identifying the body parts where Defendant had touched them. A.A. indicated Defendant had touched her on the vagina over her clothes. N.A. and F.A. indicated that Defendant had touched each of them on the crevice of the upper thigh near the vagina. The detective also interviewed the boy's mother who reported she did not see Defendant touch the children.[1]

---

[1] Defendant did not testify at trial. However, his defense was the children were either mistaken about what occurred, they had reported it incorrectly, or any contact by him was "inadvertent." (footnote included in the Court of Appeals decision)

(*Id.*, Exh. N at 2-4)

Following a jury trial[2] in July 2006, the jury found Petitioner guilty of all four counts. (*Id.*, Exhs. E-G, H at 3-4) The trial court sentenced Petitioner to the presumptive prison term of 17 years on Count One and a consecutive prison term of 10 years on Count Two. (*Id.*, Exh. I at 12) On Counts Three and Four, the trial court sentenced Petitioner to lifetime probation, to begin upon his release from prison. (*Id.* at 11)

### B. Direct Review

Petitioner sought direct review of his convictions. Petitioner's counsel filed an Opening Brief in the Arizona Court of Appeals on March 28, 2007, arguing the trial court failed to instruct the jury on the requisite *mens rea* for child molestation offenses. (*Id.*, Exh. K at 10-16) After an Answering Brief and Reply Brief were filed, the Court of Appeals issued a Memorandum Decision on December 18, 2007. (*Id.*, Exhs. L-N) The Court of Appeals found "no error, fundamental or otherwise," and affirmed Petitioner's convictions and sentences. (*Id.*, Exh. N at 11-12) Petitioner did not appeal to the Arizona Supreme Court. (Doc. 1 at 3)

### C. State Post-Conviction Proceedings

On April 8, 2008, Petitioner initiated State post-conviction proceedings by filing a Notice of Post-Conviction Relief. (*Id.*, Exh. O) On September 29, 2008, the attorney appointed by the trial court to represent Petitioner in the post-conviction proceedings filed a Notice of Completion and Motion for Extension of Time to Permit Petitioner to File a Pro Per Petition. (*Id.*, Exhs. P, Q) Counsel stated in the Notice of Completion that, after review and analysis of the record, and upon consideration of information received from Petitioner, he found no grounds for post-conviction relief and no basis upon which to file a petition. (*Id.*, Exh. Q at 2) Counsel further requested that Petitioner be granted an extension of time to file his own post-conviction petition. (*Id.* at 1) On April 23, 2009, Petitioner filed a *pro se* Petition for Post-Conviction Relief in the trial court. (*Id.*, Exh. S) After briefing was

---

[2] The trial and sentencing judge was the Honorable Richard J. Trujillo.

- 3 -

1  completed, the trial court issued a ruling in which it found that Petitioner's claims "do not
2  present material issues of fact or law which would entitle him to relief" and "that no purpose
3  would be served by any further proceedings." (*Id.*, Exhs. V, X and Y) As a result, the trial
4  court dismissed the Petition for Post-Conviction Relief. (*Id.*)

5  On September 11, 2009, Petitioner filed a Petition for Review to the Arizona Court
6  of Appeals. (*Id.*, Exh. Z)  After briefing was completed,  the Arizona Court of Appeals
7  denied review in an order issued on November 23, 2010. (*Id.*, Exhs. AA-CC) Petitioner did
8  not seek review in the Arizona Supreme Court. (Doc. 1 at 5)

### D. Federal Habeas Petition

On February 17, 2012, Petitioner filed his Petition for Writ of Habeas Corpus in this District Court.[3] (Doc. 1)  Petitioner identifies four grounds for relief in the Petition. (Doc. 1 at 6-9)  In Grounds One and Two, Petitioner contends the trial court erred in failing to instruct the jury on the requisite *mens rea* for the offenses charged, thus violating the Due Process Clause and the Sixth Amendment. (*Id.* at 6-7) In Ground Three, Petitioner alleges ineffective assistance of counsel and lists several ways in which he contends trial counsel's performance was deficient. (*Id.* at 8) In Ground Four, Petitioner alleges "[s]entencing errors, trial errors best subsumed and considered as ineffective assistance of counsel/manifest injustice." (*Id.* at 9) Petitioner then lists several alleged errors. (*Id.*) On June 5, 2012, Respondents filed their Answer and, on July 3, 2012, Petitioner filed his Reply. (Docs. 10-11)

### II. Discussion

Respondents argue the Petition should be dismissed as time-barred because it was not filed within the statute of limitations period for habeas petitions. Alternatively, Respondents contend that several of Petitioner's ineffective assistance of counsel claims are procedurally

---

[3] The docket reflects the Petition was actually filed on February 21, 2012. (Doc. 1) The February 17, 2012 filing date is the date Petitioner signed the Petition, doc. 1 at 11, and reflects the application of the prison mailbox rule, *i.e.*, a petition is deemed filed on the date it is delivered to prison authorities for mailing. *See Jenkins v. Johnson*, 330 F.3d 1146, 1149 n. 2 (9th Cir. 2003).

1 defaulted and that any remaining claims fail on the merits. Because the information presented
2 clearly establishes the Petition was filed after the limitations period expired, the Court finds
3 the Petition is barred and recommends it be denied on that basis.  The Court, therefore, finds
4 it unnecessary to address Respondents' alternative arguments.

**A. Legal Standards**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a statute of limitations on federal petitions for writ of habeas corpus filed by state prisoners. *See* 28 U.S.C. § 2244(d)(1). The statute provides:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward" the limitations period. 28 U.S.C. § 2244(d)(2); *see also Lott v. Mueller*, 304 F.3d 918, 921 (9th Cir. 2002).  An application for post-conviction relief remains "pending" for purposes of the tolling provision in § 2244(d)(2) until it achieves final resolution through the State's post-conviction procedure. *Carey v. Saffold*, 536 U.S. 214, 219-220 (2002). A post-conviction petition is "clearly pending after it is filed with a state court, but before that court grants or denies the petition." *Chavis v. Lemarque*, 382 F.3d 921, 925 (9th Cir. 2004). In Arizona, post-conviction review is pending once a notice of post-

1 conviction relief is filed even though the petition itself may not be filed until later. *Isley v. Arizona Department of Corrections*, 383 F.3d 1054, 1056 (9th Cir. 2004) ("[W]e hold that Isley's state petition was "pending" within the meaning of 28 U.S.C. § 2244(d)(2) and he was entitled to tolling from the date when the Notice was filed. The district court erred in dismissing his petition as untimely.").

The AEDPA statute of limitations is subject to equitable tolling in appropriate cases. *Holland v. Florida*, 130 S.Ct. 2549, 2560 (2010). For equitable tolling to apply, a petitioner must show "(1) that he has been pursuing his rights diligently and (2) that some extraordinary circumstances stood in his way" that prevented him from filing a timely petition. *Id.* at 2562 (quoting *Pace*, 544 U.S. at 418) (internal quotation marks omitted).

**B. Analysis**

Here, the Arizona Court of Appeals, on direct review, affirmed Petitioner's convictions and sentences on December 18, 2007. (Doc. 10, Exh. N at 12) Petitioner then had thirty days to seek review in the Arizona Supreme Court. *See* Ariz. R. Crim. P. 31.19(a) (petition for review to the Arizona Supreme Court must be filed within 30 days after the filing of the decision by the Court of Appeals). As a result of Petitioner's failure to seek review in the Arizona Supreme Court, his convictions became final upon the expiration of the time to seek review, which was January 17, 2008. *See* 28 U.S.C. § 2244(d)(1)(A); *Hemmerle v. Schriro*, 495 F.3d 1069, 1074 (9th Cir. 2007) (direct appeal was final on the date the petitioner allowed his time to seek review in the Arizona Supreme Court to expire). Thus, the AEDPA's statute of limitations period began running the next day, on January 18, 2008.

On April 8, 2008, after the limitations period had been running for 81 days, Petitioner filed his Notice of Post-Conviction Relief, thus tolling the limitations period. The limitations period remained tolled until November 23, 2010, the date on which the Arizona Court of Appeals denied review of the trial court's dismissal of Petitioner's post-conviction petition. Thus, the limitations period began running again the next day, November 24, 2010, because no application for post-conviction relief was "pending" at that time. *See* 28 U.S.C. §

1  2244(d)(2); *Hemmerle*, 495 F.3d at 1077 (after denial of review by the Arizona Supreme Court, "nothing remained 'pending' for purposes of § 2244(d)(2)."); *see also Lawrence v. Florida*, 549 U.S. 327, 334 ("When the state courts have issued a final judgment on a state [post-conviction] application, it is no longer pending even if a prisoner has additional time for seeking review of that judgment through a petition for certiorari.") The remaining 284 days of the limitations period then ran uninterrupted until Sunday, September 4, 2011. Because the final day of the limitations period was a Sunday, the deadline for Petitioner to file a habeas petition in federal court was Monday, September 5, 2011. Petitioner, however, did not file his Petition until February 17, 2012, more than five months after the limitations period expired. Consequently, the Petition is untimely.

In the Petition's section that provides an opportunity to explain why the statute of limitations does not bar the Petition, Petitioner wrote the following:

> The late filing of this writ is due to the Arizona Department of Corrections failing to provide payment from my prison inmate account. I have been attempting to have funds withdrawn from my account since August, 2011. I have inmate letter copies written to staff to support my repeated request for a check to file this petition.

(Doc. 1 at 11)

As referenced above, the limitations period set forth in § 2244(d) is subject to equitable tolling where a petitioner shows he has been pursuing his rights diligently and that extraordinary circumstances prevented him from filing a timely petition. *Holland*, 130 S.Ct. at 2562. A petitioner seeking equitable tolling bears the burden of making these showings. *Doe v. Busby*, 661 F.3d 1001, 1011 (9th Cir. 2011). Equitable tolling is applied sparingly, as reflected by the "extraordinary circumstances" requirement. *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009). An "external force must cause the untimeliness, rather than, as we have said, merely 'oversight, miscalculation or negligence on [the petitioner's] part.'" *Id.* (quoting *Harris v. Carter*, 515 F.3d 1051, 1055 (9th Cir. 2008)). Tolling, however, is not available in most cases. *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (stating that "the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.") (citation omitted).

- 7 -

1  Respondents argue that Petitioner "is not entitled to equitable tolling because he has
2  shown neither extraordinary circumstances nor diligence." (Doc. 10 at 12) They contend
3  Petitioner provided no documentary evidence to support his contention in the Petition that
4  he has been attempting to have funds withdrawn from his inmate account since August 2011.
5  (*Id.*) Additionally, Respondents assert that Petitioner could have submitted the Petition to the
6  District Court before the deadline and requested additional time to submit the filing fee. (*Id.*
7  at 15 (includes citations)).

8  In support of their arguments against equitable tolling, Respondents attach to their
9  Answer a Declaration from Christine Amos, a Fiscal Services Specialist III in the business
10 office at the Arizona State Prison Complex-Eyman ("ASPC-Eyman"), the facility where
11 Petitioner is currently housed. (Doc. 10, Exh. GG) Among other responsibilities, Ms. Amos
12 is the Inmate Trust Account Supervisor for the complex. (*Id.*) She explains in the Declaration
13 that an inmate seeking disbursement of funds from his inmate trust account, including for the
14 purpose of paying a filing fee in federal court, must complete an "Inmate Request for
15 Withdrawal" form. (*Id.*) Ms. Amos avers the only such form from Petitioner is one dated
16 January 11, 2012, requesting a disbursement for court filing fees. (*Id.*) A check was then
17 issued to Petitioner on January 26, 2012, and cashed by the District Court of Arizona's Clerk
18 of Court on February 22, 2012. (*Id.*) Ms. Amos further explains that Arizona Department of
19 Corrections' ("ADOC") computer records show that Petitioner, while housed in other ADOC
20 facilities, used the Inmate Request for Withdrawal form 33 times between January 22, 2008
21 and April 23, 2012, thus demonstrating his knowledge of, and familiarity with, the process
22 for requesting funds. (*Id.*) Finally, Ms. Amos explains that it is her custom and practice to
23 require ADOC inmates to use the correct procedure when requesting disbursement of their
24 funds and if Petitioner had submitted a request for funds by using the grievance procedure,
25 she would have instructed him to resubmit his request using the proper form. (*Id.*)

26 Respondents also attach a Declaration from Julie Morrissey, a Correctional Officer
27 III ("COIII") at ASPC-Eyman whose duties include attempting to informally resolve issues
28 raised by inmates pursuant to the Inmate Grievance Procedure. (Doc. 10, Exh. HH) The

- 8 -

1 grievance procedure requires inmates to first attempt to resolve their issues informally by
2 submitting an "Inmate Letter." (*Id.*) A "Formal Grievance" may then be filed if the inmate
3 is dissatisfied with the informal resolution of the issue. (*Id.*)

4 Ms. Morrissey explains that Petitioner has been incarcerated in ADOC since
5 September 8, 2006, and housed at his current facility since July 12, 2011. (*Id.*) She avers
6 that, on April 12, 2012, she reviewed Petitioner's file to see if he had used the grievance
7 procedure to request the filing fee for his habeas petition, but found no documentation exists
8 to support such a request. (*Id.*) On the same day, Ms. Morrissey spoke to Petitioner and asked
9 him if he had any paperwork relating to a request for the filing fee. (*Id.*) He subsequently
10 showed her two Inmate Letters, the first was dated August 20, 2011, and addressed to Inmate
11 Banking at ADOC's Eyman Complex. (*Id.*) In it, Petitioner stated that he needed a money
12 order to pay the filing fee for his habeas petition and asked how to do so, explaining he had
13 just moved from the Winchester Unit in Tucson. (*Id.*) The second Inmate Letter, dated
14 January 11, 2012, was addressed to the COIII at Petitioner's housing unit and stated he
15 needed a check cut for his habeas filing fee. (*Id.*)

16 In his Reply, Petitioner argues he was unaware he could file the Petition without the
17 filing fee. (Doc. 11 at 1-2) He further contends ADOC was responsible for the delay in
18 withdrawing the funds for his filing fee, the delay was not his fault, and it did not prejudice
19 Respondents' ability to answer the Petition. (*Id.* at 2) Petitioner concedes "in hindsight" he
20 could have filed a grievance regarding the delay in the disbursement of his filing fee, "but
21 that presupposes an expedient process and resolution and such is not the case in reality." (*Id.*)
22 Petitioner presents no other information in support of his request for equitable tolling. (*See*
23 *id.*)

24 The Court finds an evidentiary hearing on the equitable tolling issue is not warranted
25 because Petitioner has not demonstrated he was pursuing his rights diligently and
26 extraordinary circumstances stood in his way preventing him from filing a timely petition.
27 *See Holland*, 130 S.Ct. at 2562. Petitioner's lack of knowledge he could file the Petition
28 without the filing fee does not constitute equitable tolling. Petitioner's unfamiliarity with the

1 legal process is not an extraordinary circumstance warranting equitable tolling. *See, e.g.,* 2 *Isabel v. Ryan*, 2012 WL 1038772, at *4 (D. Ariz. March 13, 2012) (citations omitted); 3 *Banes v. Schriro*, 2008 WL 2668943, at *8 (D. Ariz July 1, 2008) (citations omitted). Even 4 assuming Petitioner submitted to prison officials the August 20, 2011 Inmate Letter regarding 5 the filing fee, Petitioner's grievance file shows, and Petitioner concedes, he never filed a 6 formal grievance to follow up the Inmate Letter. (Docs. 10, Exh. HH at 2-3; 11 at 2) 7 Additionally, given Petitioner's extensive prior use of the Inmate Request for Withdrawal 8 form, he knew or should have known the form, not an Inmate Letter, was the proper 9 procedure for requesting a disbursement from his inmate account.

10 Finally, the record reflects, and he presents nothing to show otherwise, Petitioner 11 waited nearly five months, until January 11, 2012, before submitting the second Inmate 12 Letter and the Inmate Request for Withdrawal. (*Id.*, Exhs. GG at Attachment 2; HH at 13 Attachment 2)  By that time, the September 5, 2011 deadline for Petitioner to file a timely 14 habeas petition in federal court had expired. He provides no explanation for waiting so long 15 to again request the filing fee disbursement. The filing fee check was then issued only 15 16 days later, suggesting had Petitioner acted sooner, he would have received a check in time 17 to file a timely petition. Thus, Petitioner has not shown he was pursuing his rights diligently.

18 The facts do not show extraordinary circumstances stood in Petitioner's way 19 preventing him from filing a timely petition. Even if Petitioner did not receive a response to 20 his first Inmate Letter, he could have promptly followed up with a Formal Grievance. He did 21 not do so. Likewise, in lieu of the first Inmate Letter, he could have submitted an Inmate 22 Request for Withdrawal, as he had done on numerous occasions in the past. The Court finds 23 these circumstances are not extraordinary and did not prevent Petitioner from filing a timely 24 petition. For these reasons, Petitioner is not entitled to equitable tolling of the limitations 25 period.

26 **C. Conclusion**

27 For the foregoing reasons, the Court finds that Petitioner filed the Petition after the 28 limitations period expired and undisputed facts and circumstances do not support equitable

1 tolling. Consequently, the Petition is barred by the AEDPA's statute of limitations.

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, doc. 1, be **DENIED**;

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because dismissal of the Petition is justified by a plain procedural bar and jurists of reason would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, must not be filed until entry of the District Court's judgment. The parties have 14 days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 6(a), (b), and 72. Thereafter, the parties have 14 days within which to file a response to the objections. Failure to timely file objections to the Magistrate Judge's Report and Recommendation may result in the acceptance of the Report and Recommendation by the district court without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to timely file objections to any factual determinations of the undersigned Magistrate Judge will be considered a waiver of a party's right to appellate review of the findings of fact in an order of judgement entered pursuant to the Magistrate Judge's recommendation. *See* Fed.R.Civ.P. 72.

Dated this 4th day of June, 2013.

Lawrence O. Anderson
United States Magistrate Judge

- 11 -